AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>NORRIS WILLIAMS | ) ) ) ) ) ) ) |

Case No.
    2:15-mj- 1126 -CM

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Oct. 24, 2014 to Oct. 20, 2015___ in the county of ___Lee___ in the
___Middle___ District of ___Florida___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i) and 846 | Possession with intent to distribute and distribution of heroin and attempt to possess with intent to distribute 100 or more grams of a mixture or substance containing a detectable quantity of heroin. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Adam Heinlein, Task Force Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/20/2015___

_____
*Judge's signature*

City and state: ___Fort Myers, Florida___   Carol Mirando, United States Magistrate Judge
*Printed name and title*

## Affidavit of Adam Heinlein

I, Adam Heinlein, being duly sworn, do hereby depose and state the following:

1.      I am a Trooper with the Florida Highway Patrol (FHP) and have been so employed since 2001; I have been assigned to the Drug Enforcement Administration (DEA) Task Force since 2011.  During that time, I have attended hundreds of hours of training with both the FHP and DEA in the areas of contraband interdiction, search and seizure, drug investigation techniques, interview techniques, and financial investigations, etc.

2.      I am familiar with the facts and circumstances set forth in this affidavit as a result of my participation in the investigation; as a result of my experience, training, and background as a Task Force Agent; as a result of personal observation and examination of relevant evidence; and as a result of information provided to me by other law enforcement officers and witnesses. The information contained in this affidavit is not inclusive of all the facts of the investigation and is provided for the limited purpose of establishing probable cause for the arrest of Norris WILLIAMS.

3.      Your Affiant is charged with the responsibility of investigating crimes including drug and contraband offenses, as well as financial crimes including money laundering.  Your Affiant has assisted in the preparation and execution of numerous search warrants.



4.     This affidavit is offered in support of a criminal complaint charging Norris WILLIAMS with possession with intent to distribute and distribution of heroin and attempt to possess with intent to distribute heroin in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

5.     On September 2, 2014, DEA agents met with a confidential source, hereafter referred to as CS. The CS advised that he/she could purchase ounce quantities of heroin from Norris WILLIAMS, aka "TWIN", for $2,700.00 to $2,800.00 per ounce. The CS has known WILLIAMS as a source of supply for cocaine and crack cocaine in the past. WILLIAMS provided the CS with telephone number (239) 878-9729.     The CS had recently spoken with WILLIAMS and learned that WILLIAMS had been working with his twin brother, Morris WILLIAMS, distributing heroin. The CS learned that Morris WILLIAMS had recently traveled to Colombia, South America, with a female. Special Agent Strang confirmed that in June and July of 2014, Morris WILLIAMS traveled between Fort Lauderdale, Florida and Bogota, Colombia.

6.     In October 2014, DEA began buying heroin from Norris WILLIAMS in Fort Myers, Florida. On October 24, 2014, the CS bought 6.8 net grams of heroin from Norris WILLIAMS; on November 5, 2014, an undercover law enforcement officer bought 13.9 net grams of heroin from Norris WILLIAMS; on November 18, 2014, an undercover law enforcement officer bought 13.7 net grams of Heroin from Norris WILLIAMS; on December 17, 2014, an undercover law enforcement officer bought 10.8 net grams of Heroin from Norris WILLIAMS;



and on February 11, 2015, an undercover law enforcement officer bought 27.8 net grams of Heroin from Norris WILLIAMS.

7.      The CS offered to introduce WILLIAMS to his/her heroin supplier (DEA Task Force Agent Victor Chica), said to be a Colombian who obtains multiple kilograms of heroin from Colombia.  The CS arranged an initial meeting to do so on July 2, 2015, at the Ker's Wing House Restaurant on U.S. 41 in Fort Myers, Florida.  The meeting was recorded.

8.      During the undercover meeting, Agent Chica told WILLIAMS that he was looking for a business associate or "connection" in Southwest Florida. WILLIAMS responded that he could be that connection because he controlled a large area from Fort Myers to St. Petersburg, Florida.  WILLIAMS advised agent Chica that he purchased heroin from Mexican suppliers.  Agent Chica told WILLIAMS that the heroin he received was shipped directly from Colombia and that at least three kilograms of heroin could be produced from such a single kilogram of pure Colombian heroin.  Agent Chica advised WILLIAMS that he would sell a kilogram of pure heroin for $75,000.  WILLIAMS agreed on the price and advised that he would need some time to get the money together.  Agent Chica told WILLIAMS that he would call when a kilogram of pure heroin was available.  WILLIAMS stated that he would have the money ready.

9.      On July 22, 2015, Agent Chica, TFA Edwin Pagan and the CS met with Norris WILLIAMS in Pagan's undercover vehicle in the parking lot of the Bell Tower Mall, near Ft. Myers, Florida; UC Pagan was previously supplied with one kilogram of heroin provided by the DEA Northeast Drug Laboratory.  Agent

3



Pagan who was in the driver's seat of the UC vehicle, showed WILLIAMS who was in the front passenger seat, a kilogram of heroin to demonstrate the quality of the heroin WILLIAMS could buy and to ensure WILLIAMS that he was dealing with "legitimate drug dealers" and not thieves.  Agent Chica sat in the rear passenger seat.  WILLIAMS used a small knife to cut into the packaging material and inspected the heroin for quality.  WILLIAMS stated that he distributes heroin in Fort Myers, Sarasota and Bradenton.  He also stated that he is currently working with Mexican heroin that is gray and smells like cocaine.  WILLIAMS stated that if the heroin is of good quality, it would sell really fast in the streets.  WILLIAMS advised that he was going to contact "somebody" who would invest money to buy a kilogram of pure heroin and would let Agent Chica know when he was ready.  The undercover meeting was recorded.

10.    On September 16, 2015, Agent Chica called Norris WILLIAMS at (239) 878-9729; during the conversation, WILLIAMS stated that he did not have enough money to acquire a whole kilogram of heroin but advised that he could purchase half a kilogram for $37,000.  WILLIAMS then told Agent Chica that he would call him back because he was dealing with a bail bondsman.  WILLIAMS called Agent Chica back and advised that he wanted half a kilogram; Agent Chica told WILLIAMS that he had spoken to his boss and was only authorized to sell half a kilogram of pure heroin for $40,000.  WILLIAMS agreed to do the deal in the near future.

11.    Norris WILLIAMS attempted to reach Agent Chica on September 22, 28, 30, 2015, and October 2, 2015, but Chica did not answer.  On October 2,

4



2015, Agent Chica returned Norris WILLIAMS' phone calls and told WILLIAMS that the heroin would be arriving within a week. WILLIAMS advised that he was going to try to come up with more money to be ready. WILLIAMS insisted that he was the right man for the job and just needed the right product in order to prove that he was worthy of being part of undercover Agent Chica's trafficking organization. WILLIAMS opined that he could produce a high "turn around" with the right product (heroin) once he got started. WILLIAMS advised Agent Chica that he had $40,000 available. Agent Chica told WILLIAMS that if he (WILLIAMS) came up with $50,000, Chica would deliver a kilogram of pure heroin to WILLIAMS and that WILLIAMS could pay the remaining $25,000 of the purchase price once he sold the heroin. On October 5, 2015, Agent Chica called Norris WILLIAMS who advised that he had almost all of the money together in order to get the kilogram of heroin.

12.     On October 13, 2015, at 5:26 p.m., Agent Chica called Norris WILLIAMS who advised that the drugs that he was selling were "mediocre" and he wasn't making him much money. However, WILLIAMS wanted an opportunity to show Agent Chica what he was capable of doing (in terms of distributing high grade heroin); WILLIAMS requested a delivery date for the heroin stating he had people waiting.

13.     On October 15, 2015, WILLIAMS sent a text to Agent Chica in which he advised that he would be ready on Sunday, (October 18, 2015) at noon; Agent Chica called WILLIAMS and told him that he would not be ready until Monday, (October 19, 2015). During the conversation, Agent Chica provided

WILLIAMS with details on the anticipated transaction; WILLIAMS agreed and added that he would demonstrate what he was capable of doing. WILLIAMS advised that he had approximately $45,000 to $46,000 ready to purchase the heroin.

14. On October 18, 2015, Agent Chica texted Norris WILLIAMS and advised that he was not going to be ready until Tuesday, October 20th; WILLIAMS responded and agreed. On October 20, 2015, Agent Chica spoke to WILLIAMS by telephone and agreed to meet at the Publix on Six Mile Cypress in Lee County. At approximately 12:50 p.m., WILLIAMS arrived alone driving a white 1996 Ford station wagon bearing Florida tag no. 9918PW; WILLIAMS got out of his car and into the front passenger seat of an undercover vehicle driven by Agent Chica. Inside the vehicle, WILLIAMS advised Agent Chica that his money was in his vehicle which was parked approximately 100 feet away. Agent Chica advised WILLIAMS that he should go retrieve his money and that the kilogram of heroin would not arrive until after Chica had seen the money. WILLIAMS then walked to his car and returned with a shoe box containing approximately $50,000 in cash. WILLIAMS advised that he would mix this heroin with approximately ten ounces of inferior heroin he had to improve its quality. WILLIAMS furthered advised that he expected to have the additional money after selling some of the heroin, later in the day. Agents thereafter moved in and arrested WILLIAMS.

6



Wherefore, there is probable cause to believe that Norris WILLIAMS possessed with intent to distribute and distributed heroin and attempted to possess with intent to distribute heroin, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Adam Heinlein, Task Force Officer
Drug Enforcement Administration (DEA)

Sworn to before me this 20th day
of October, 2015, in Fort Myers, Florida

Carol Mirando
United States Magistrate Judge
Middle District of Florida

7